**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**ROCKY J. HALL,**

                    **Plaintiff,**

**-v-**

**VILLAGE OF GRATIS, OHIO, et al.,**

                    **Defendants.**

**Case No. 3:07-cv-351**

**Judge Thomas M. Rose**

_____

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT (Doc. #25) AND TERMINATING THIS CASE**
_____

This matter is a civil rights action that arises from the arrest of Plaintiff Rocky J. Hall ("Hall") by Defendant Officer Jason Jacobs ("Officer Jacobs"). Duane L. Jacobs ("Duane Jacobs"), who was the Police Chief of the Village of Gratis, Ohio, at the time, is also a defendant as is the Village of Gratis, Ohio ("Gratis").

Hall's First Cause of Action is against Officer Jacobs for unlawful arrest and detention. Hall's Second Cause of Action is against Officer Jacobs for excessive force. Hall's Third Cause of Action is against Duane Jacobs for his ratification of Officer Jacob's alleged unlawful arrest and detention and for his alleged continued unlawful detention of Hall after arriving on the scene. Hall's Fourth Cause of Action is against Gratis for violation of Hall's civil rights pursuant to its policies, practices and customs and due to its failure to train. All four of Hall's Causes of Action are brought pursuant to 42 U.S.C. § 1983. Hall also seeks an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

This action arises under the Constitution and laws of the United States. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Also, venue is proper in the

Southern District of Ohio, Western Division at Dayton, because a substantial part of the events giving rise to Hall's claims occurred in the Southern District of Ohio, Western Division at Dayton.

Officer Jacobs, Duane Jacobs and Gratis (collectively the "Defendants") have collectively filed a Motion for Summary Judgment as to all claims. This Motion is now fully briefed and ripe for decision.

A factual background will first be set forth followed by the standard of review and an analysis of the Defendants' Motion for Summary Judgment. The factual background will be presented, as it must, in a light most favorable to Hall, the non-movant.

## FACTUAL BACKGROUND

Hall identifies several details leading up to his arrest that he believes are relevant. First, his business was located around 800 feet from Jodie Zimmerman's business on the main road in Gratis so Hall regularly drove by Jodie Zimmerman's business. (Deposition of Jason Jacobs ("Jason Jacobs Dep.") 27-28 June 18, 2008; Deposition of Rocky Jay Hall ("Hall Dep.") 18-19 June 18, 2008.) Jodie Zimmerman claimed that Hall harassed her on several occasions by driving by her slowly and "flipping her off." (Voluntary Statement of Jodie Zimmerman June 29, 2006.) She had made several complaints to the Gratis Police Department that Officer Jacobs investigated and determined that no criminal activity was taking place. (Jason Jacobs Dep. 33-34.)

Hall was arrested by Officer Jacobs on June 29, 2006. On that date, Jodie Zimmerman called the Preble County Sheriff's Office and reported as follows:

Hi this is Jodie Zimmerman. I just took (inaudible) home from work and I see
Rocky drive by me real fast and go around the block and he come up on…. I was

on Thomas Street and he blocked me at Harrison and Thomas Street, was parked in front of me, wouldn't let me go and his rollback [tow truck] was coming up behind me. And when the rollback got halfway up behind me, then he pulled out real slow…. I am afraid to drive out of town…. I'm driving in Gratis. I'm afraid to leave town because they're going to follow me…. I'm going down the alley that comes out by the post office…. I'm at the post office and he just… drove in… he's sitting behind me… with the black - his black wrecker…. I have two children with me… my girls are crying.

(Preble County Sheriff's Office dispatch recording of Jodie Zimmerman; Voluntary Statement of Jodie Zimmerman.)

As a result of this call, Officer Jacobs was dispatched to Jodie Zimmerman's location. (Jason Jacobs Dep. 50.) The dispatcher advised Officer Jacobs that Jodie Zimmerman was "being blocked in by Rocky Hall and Rocky Hall's tow truck, being driven by an unknown individual, and that they were blocking the roadway and not allowing her to leave." (Id. 50-51.)

Officer Jacobs responded to the Post Office in Gratis where he found Jodie Zimmerman parked in her vehicle. (Id. 51-53.) Hall was seated in his vehicle that was parked nearby. (Id. 54.) Officer Jacobs also observed a black tow truck in the area which left before Officer Jacobs could make contact with the driver. (Id. 56, 62.)

Officer Jacobs approached Jodie Zimmerman's vehicle and saw her and two children visibly upset and crying. (Id. 21.) Jodie Zimmerman told Officer Jacobs that Hall pulled in front of her vehicle and the black tow truck pulled behind her and would not permit her to leave. (Id. 60-61.) Jodie Zimmerman confirms that she was blocked by Hall and his black wrecker in her Voluntary Statement. (Voluntary Statement of Jodie Zimmerman.) Hall admits that he and his tow truck driver were trying to follow Jodie Zimmerman but lost her and later found her at the Post Office. (Voluntary Statement of Rocky J. Hall June 29, 2006.)

While Officer Jacobs was talking to Jodie Zimmerman, Hall exited his vehicle and

walked towards Officer Jacobs and Jodie Zimmerman. (Jason Jacobs Dep. 65.) Officer Jacobs ordered Hall to return to his vehicle and remain seated therein. (Id.) Hall, not believing that an investigation was underway or that he was not permitted to leave, returned to his vehicle and attempted to drive away. (Affidavit of Rocky J. Hall ("Hall Aff.") ¶ 10 Sept. 22, 2008. )

In response, Officer Jacobs ordered Hall to stop his vehicle. (Jason Jacobs Dep 65.) After several commands, Hall stopped. (Id.  81.)

Officer Jacobs then approached Hall's vehicle and ordered Hall to exit. (Id. 81.) According to Hall, Officer Jacobs pulled out his ASP[1] and said, "Get out, or I'm going to break the fucking window." (Hall Dep. 51-53.) Officer Jacobs told Hall that he was investigating an complaint made by Jodie Zimmerman and that Hall was not free to leave. (Jason Jacobs Dep. 81.) Hall refused to exit his vehicle at that time. (Id.)

Deputy Brad Moore ("Deputy Moore") of the Preble County Sheriff's Office then arrived on the scene. (Id. 83.) Deputy Moore had been dispatched to Gratis because the Sheriff's Office was receiving several calls that a Gratis police officer was on active patrol with a small child in the front seat. (Deposition of Brad Ray Moore ("Deputy Moore Dep.") 5 June 20, 2008.)

When Deputy Moore arrived on the scene, he observed Officer Jacobs standing at Hall's driver's side door. (Id. 7.) He also observed Jodie Zimmerman in her car and crying and upset. (Id. 49.) Officer Jacobs, according to Deputy Moore, extended his ASP baton in a proper manner, raised it over his head and screamed at Hall to exit the vehicle three or four times. (Id. 7, 51-52) Deputy Moore also ordered Hall out of his vehicle several times. (Jason Jacobs Dep. 84.) Hall indicated to Deputy Moore that, "[i]f you get that officer away, I will get out." (Deputy

---

[1]Extendable baton

Moore Dep. 17.)  Hall then exited his vehicle. (Id. 11.)

After Hall exited his vehicle, Deputy Moore and Officer Jacobs had a private conversation. (Moore Dep. 12.) During this time, Hall was walking up and down the street talking on his cell phone. (Id. 15.)

Officer Jacobs told Deputy Moore about the call from Jodie Zimmerman. (Id. 13.) After the Sheriff, the Chief Deputy and the Ohio State Patrol Sergeant arrived, Deputy Moore told Officer Jacobs that they were there investigating the allegation that Officer Jacobs had a child riding in the car. (Id.)

Hall observed Officer Jacobs "beating" his ASP on the ground, apparently trying to close it. (Hall Dep. 54.) Hall did not think this was a threat directed at him, and Deputy Moore observed that Officer Jacobs closed his ASP "on the ground in a normal fashion." (Hall Dep. 54; Moore Dep. 52-53.)

Officer Jacobs handcuffed Hall and took him into custody. (Jason Jacobs Dep. 117-18.) Hall was searched incident to his arrest and was placed in the back of Chief Duane Jacobs' police cruiser where he remained for "about an hour." (Hall Dep. 57, 63.) He was then taken to the Gratis Police Department. (Jason Jacobs Dep. 118-19.) Hall did not raise any complaints concerning the manner in which he was handcuffed. (Id.)

At the Gratis Police Department, Officer Jacobs, Duane Jacobs, who was the Gratis Police Chief at the time, and Deputy Terry Snowden discussed what charges to file against Hall. (Id. 87.) Ultimately Officer Jacobs decided to arrest Hall for the offenses of disorderly conduct and hindering movement. (Jason Jacobs Dep. 88.) He was released from custody that evening. (Hall Dep. 69.)

Duane Jacobs later sent allegations against Hall for kidnaping, abduction and menacing by stalking to the prosecutor for review. (Jason Jacobs Dep. 89-95.) However, no further charges were filed.

Hall provides additional testimony as to why he was following Jodie Zimmerman on June 29, 2006, before he was arrested by Officer Jacobs for disorderly conduct and hindering movement. Between 5:00 and 7:00 p.m. Hall received a call that James Zimmerman, one of his employees and the spouse of Jamie Zimmerman, was being arrested by Officer Jacobs and Chief Duane Jacobs for violating a protective order. (Hall Dep. 27-28.) Hall went to Jamie Zimmerman's residence and saw Jamie Zimmerman in the back of the police cruiser. (Id. 28-29.)

Hall then went to the home of Gratis Mayor Denzil Bratton ("Bratton") to discuss the quality of Gratis's law enforcement and to discuss Jamie Zimmerman. (Id. 31-32.) Bratton was not home. (Id.) As he was leaving Bratton's residence, Hall was stopped by Officer Jacobs and given a ticket for having made an improper U-turn while Hall was traveling to Bratton's residence. (Id. 32.)

When he was being ticketed by Officer Jacobs, Hall noticed a minor child inside Officer Jacobs' police cruiser without proper restraint. (Id. 33.) When Hall asked Officer Jacobs if it was legal to haul a child around in his cruiser without being restrained, Officer Jacob's replied, "It's none of your damn business. Get in your car." (Id. 41.) Hall immediately reported the presence of the minor child to the county sheriff and the Ohio State Patrol. (Voluntary Statement of Rocky J. Hall.)

Hall then began following Officer Jacobs' police cruiser. (Id.) Hall followed Officer Jacobs to Jodie Zimmerman's Marathon Station where he took digital photographs of the child in

the police cruiser. (Id.) Officer Jacobs and Jodie Zimmerman had a conversation at that time. (Hall Aff. ¶ 4.) Officer Jacobs remembers going to the Marathon Station for some type of service on the police cruiser. (Officer Jacobs Dep. 44.)

When Officer Jacobs left the Marathon Station, Hall and one of his tow truck drivers attempted to follow but they "lost" him. (Voluntary Statement of Rocky J. Hall, Hall Dep. 38-40.) They were trying to keep Officer Jacobs in sight until the "troopers" arrived. (Voluntary Statement of Rocky J. Hall.)

Hall and his tow truck operator then observed Jodie Zimmerman in her car and believed that she was attempting to meet Officer Jacobs to exchange the child before the authorities arrived. (Voluntary Statement of Rocky J. Hall; Hall Dep. 40-44.) They tried to follow Jodie Zimmerman but "lost" her too. (Id.) After searching several streets in Gratis, Hall and his tow truck operator "intercepted" Jodie Zimmerman at the Post Office. (Hall Dep. 40-41.) Officer Jacobs arrived on the scene shortly thereafter responding to Jodie Zimmerman's call to the Preble County Sheriff's Office. (Jason Jacobs Dep. 51-53.)

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A

Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

## ANALYSIS

Hall brings four Causes of Action pursuant to 42 U.S.C. § 1983. Section 1983 alone establishes no rights to relief, but provides remedies for deprivations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). "To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)(citing

*West v. Atkins*, 487 U.S. 42, 48 (1988)).

In this case, there is no dispute that Officer Jacobs and Duane Jacobs were acting under color of state law at the time of the alleged constitutional infringements. Therefore, to satisfy a § 1983 claim, Hall must present evidence that he was deprived of a right secured by the Constitution or laws of the United States by Officer Jacobs and/or Duane Jacobs.

The Defendants have moved for summary judgment on each of Hall's alleged deprivations of constitutional rights. Therefore, Defendants' Motion for Summary Judgment on each cause of action for deprivation of constitutional rights will be analyzed.

### First Cause of Action: Unlawful Arrest and Detention

In his First Cause of Action, Hall alleges that Officer Jacobs unlawfully arrested and detained him and unlawfully seized his person and property. (Compl. ¶ 25.) The Defendants respond that Hall was not unlawfully seized, detained, arrested or searched by Officer Jacobs.

Legal Provisions

Claims of unreasonable search and seizure and false arrest are analyzed under the Fourth Amendment. *Martin v. City of Columbus*, No. 2:03CV161, 2005 WL 2671372 at *2 (6th Cir. Oct. 19, 2005)(citing *Tennessee v. Garner*, 471 U.S. 1 (1985)). The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." *United States v. Mendenhall*, 446 U.S. 544, 550 (1980).

Thus, in addition to protection against unreasonable searches and seizures of the person, the Fourth Amendment extends protection against unreasonable seizures of personal property. *United States v. Place*, 462 U.S. 696, 700-001 (1983). Seizure of personal property is generally

viewed as per se unreasonable unless a proper judicial warrant has been issued. *Id.* However,

when the nature and extent of the seizure is minimally intrusive of the individual's Fourth

Amendment interests, the opposing law enforcement interest can support a seizure based upon

less than probable cause. *Id.* at 703.

A seizure for Fourth Amendment purposes occurs when, by means of physical force or a

show of authority, an individual's freedom of movement is restrained. *Mendenhall*, 446 U.S. at

553. A person has been seized when, in view of all the circumstances surrounding the incident, a

reasonable person would have believed that he or she was not free to leave. *Id.* at 554.

A seizure may not, however, be an arrest. The Fourth Amendment permits an officer to

stop and briefly detain an individual for an investigative purpose if the officer has a reasonable

suspicion supported by articulable facts that the individual has been or is engaged in criminal

activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Hensley*, 469 U.S. 221, 226-27

(1985). In other words, a police officer's seizure during the course of an arrest is violative of the

Fourth Amendment if it is unreasonable. *Zumbroegel v. City of Dearborn Heights*, 705 F. Supp.

358, 364 (E.D. Mich. 1989). Reasonableness is determined by balancing "the nature and quality

of the intrusion on the individual's fourth amendment interests against the importance of the

governmental interests alleged to justify the intrusion." *Id.*(citing *Garner*, 471 U.S. at 8). The

assessment of reasonableness is an objective one based upon the totality of the circumstances

known to the officer at the time of the incident. *Id.* "The plaintiff need only prove that the force

used in subduing him exceeded that which reasonably could have been considered necessary to

take him in custody." *Id.* at 364-65.

On the other hand, an arrest must be supported by probable cause to believe that an

individual had committed or is committing a criminal offense. *Beck v. State of Ohio*, 379 U.S. 89 (1964). Probable cause exists if, at the moment of the arrest, the facts and circumstances within the knowledge of the arresting officer and of which the arresting officer had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the alleged criminal had committed or was committing an offense. *Id.* at 91. "Probable cause is determined by the totality of the circumstances 'from a law enforcement officer's perspective.'" *United States v. Craig*, 198 Fed. Appx. 459, 462 (6th Cir. 2006)(quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993)). For example, an eye witness's statement that he or she saw a crime committed or was the victim of a crime is generally sufficient to establish probable cause, particularly where nothing about the allegation itself casts doubt on the victim's reliability. *United States v. Shaw*, 464 F.3d 615, 623 (6th Cir. 2006).

Finally, an arresting officer's state of mind is irrelevant to the existence of probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The officer's subjective state of mind for making an arrest need not be the criminal offense as to which the known facts provide probable cause. *Id.* The Fourth Amendment permits certain actions to be taken in certain circumstances, whatever the subjective intent. *Id.*

Analysis

Officer Jacobs received a dispatch that Hall and another individual were blocking Jodie Zimmerman's path of travel at or near the Gratis Post Office. Upon arriving at the Gratis Post Office, Jodie Zimmerman told Officer Jacobs that Hall pulled in front of her vehicle and the black tow truck pulled behind her and would not permit her to leave. She also told Officer Jacobs that Hall had been chasing her throughout Gratis. Officer Jacobs observed that Jodie Zimmerman

and the two children in her vehicle were visibly upset and crying. As Officer Jacobs was talking with Jodie Zimmerman, Hall attempted to drive away. Officer Jacobs also observed a black tow truck in the area that left when he arrived.

A statement given by Jodie Zimmerman after Hall's arrest confirms the statements that she made to Officer Jacobs when he arrived. Also, statements given by Hall after the incident confirm that he and an associate were following Jodie Zimmerman prior to Hall's arrest.

Thus Officer Jacobs had reasonable suspicion to seize Hall and probable cause to arrest Hall. The totality of the facts and circumstances within the knowledge of Officer Jacobs indicate that he had reasonably trustworthy information regarding the specific incident in question which was sufficient to warrant a prudent man in believing that Hall had committed or was committing the offenses of disorderly conduct and hindering movement.[2]

Hall's Arguments

Hall first argues that Officer Jacobs did not witness Hall committing any crime and that Hall's arrest was allegedly based solely upon a statement by Jodie Zimmerman. However, an officer does not necessarily have to observe a crime being committed to have probable cause. An eye witness's statement that she was the victim of a crime is generally sufficient to establish probable cause, particularly where nothing about the allegation itself casts doubt on the victim's reliability.

Hall attempts to cast doubt upon Jodie Zimmerman's reliability regarding the allegation itself by presenting evidence of his prior relationship with Jodie Zimmerman and evidence of her

---

[2]Ohio's disorderly conduct statute provides that no person shall recklessly cause inconvenience, annoyance or alarm to another by hindering or preventing the movement of persons on a public street so as to interfere with the rights of others. R.C. 2917.11.

prior complaints regarding him. However, he presents no evidence casting doubt on the allegation that Officer Jacobs was investigating, the allegation that Hall and an associate were chasing Jodie Zimmerman throughout Gratis and had blocked her path of travel at or near the Gratis Post Office. In fact, Hall confirms that he and an associate were following Jodie Zimmerman throughout Gratis and he admits that he was parked near Jodie Zimmerman's vehicle at the Post Office when Officer Jacobs arrived.

Hall also attempts to cast doubt on Officer Jacobs' actions by alleging that Officer Jacobs was not a disinterested party and was aware of a complaint that Hall had made against him for having a minor child in his police cruiser. However, Officer Jacobs' subjective state of mind is irrelevant so long as he had probable cause to arrest Hall for disorderly conduct and hindering movement.

Hall next argues that he was arrested under Ohio's disorderly conduct statute, a violation of which is a minor misdemeanor. Further, Ohio law makes a full custodial arrest based upon a minor misdemeanor unlawful with a few exceptions, none of which are applicable here. See R.C. 2935.26. However, Hall's allegations are based upon 42 U.S.C. § 1983 and violations of the Fourth Amendment. And, the Fourth Amendment does not forbid warrantless arrests for minor misdemeanors. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Specifically, Ohio's requirement that an individual may not be taken into custody for committing a minor misdemeanor is greater than the requirements of the Fourth Amendment. *See State v. Brown*, 792 N.E.2d 175 (Ohio 2003).

Hall also alleges that Officer Jacobs deprived him of a micro cassette that was allegedly removed from his person and not returned in violation of the Fourth Amendment. (Compl. ¶¶30,

32.) Hall testifies that he had a "running" tape recorder in his front shirt pocket when he was searched. He also testifies that "they turned it off and a tape was taken out." (Hall Dep. 59.) When asked who removed the micro cassette tape, Hall responded, "I am not sure which one did that." (Id. At 60.) Finally, Hall testified that the micro cassette was not returned to him. (Id. 67.)

Deputy Moore was present when Hall was searched. (Hall Dep. 65.) He testified that he saw a tape recorder but did not see either Officer Jacobs or Duane Jacobs remove a micro cassette from a tape recorder nor did he see a micro cassette tape. (Moore Dep. 31-32.)

In their Motion for Summary Judgment, the Defendants argue that Hall has no evidence to show that Officer Jacobs or Duane Jacobs seized a micro cassette from Hall. To this, Hall does not respond. In his Memorandum In Opposition, Hall has failed to point to any evidence supporting his claim that Officer Jacobs or Duane Jacobs deprived him of a micro cassette that was not returned. While Hall may have mentioned the micro cassette in his deposition, the failure to identify this or any evidence in his Memorandum In Opposition must result in a grant of summary judgment on this issue to the Defendants.

Hall also argues that Officer Jacobs' conduct during the seizure of Hall was unreasonable. It was unreasonable, according to Hall, because he was seized for allegedly committing a minor misdemeanor "based solely on the unsubstantiated statement of one unreliable witness" and because Officer Jacobs was aware that Hall had reported Officer Jacobs for child endangerment.

Although Hall does not identify exactly when he believes he was seized for purposes of this analysis, the evidence indicates that Hall was seized when Officer Jacobs stopped him as he was attempting to leave the Gratis Post Office area, ordered him to get out of his car and told

him that he was not free to leave.

Officer Jacobs had reason to stop Hall from leaving since he was investigating a crime involving Hall. Further, Officer Jacob had reason to demand that Hall exit the vehicle to keep him from again attempting to leave and to insure that Hall did not have access to any weapons in the vehicle. Since it took several commands from Officer Jacobs before Hall stopped his vehicle and some time and intervention by Deputy Moore before Hall exited his vehicle, it was not unreasonable for Officer Jacob to threaten Hall using his ASP. Finally, as determined above, Officer Jacobs had probable cause to arrest Hall based upon Jodie Zimmerman's statement.

## Conclusion

In this case, the nature and quality of the intrusion on Hall's Fourth Amendment interests is outweighed by the importance of the governmental interests in investigating the crime that Hall allegedly committed. Therefore, Officer Jacobs' seizure of Hall was reasonable and was conducted in a reasonable manner. Officer Jacobs also had probable cause to arrest Hall.

There are no genuine issues of material fact and Jason Jacobs is entitled to judgment as a matter of law on Hall's First Cause of Action for unlawful seizure, arrest and detention. A reasonable finder of fact could come to but one conclusion: Officer Jacobs had reasonable suspicion to seize Hall and probable cause to arrest Hall. Further, Hall has not satisfied the summary judgment standard regarding identifying proof that the alleged seizure of the micro cassette was violative of the Fourth Amendment.

## Second Cause of Action: Excessive Force

In his Second Cause of Action, Hall alleges that Officer Jacobs used excessive force. (Compl. ¶ 34.) The Defendants argue that Officer Jacobs did not use excessive force to restrain

and arrest Hall.

Legal Provisions

Excessive force claims are to be analyzed under the Fourth Amendment and its reasonableness standard. *Sigley*, 437 F.3d at 533. The following factors are used to determine whether an officer's actions are reasonable: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 534. The reasonableness of a particular use of force is to be judged from the perspective of a reasonable officer of the scene rather than with hindsight. *Id.* Because a test of objective reasonableness is to be used, the underlying motivations of the officer in making the arrest are not considered. *Kostrezewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).

When making an arrest or investigatory stop, the officer has the right to use some degree of physical coercion or threat thereof to effect the arrest or investigatory stops. *Id.*(citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). For example, in *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989), the Sixth Circuit recognized a distinction between showing force and actually using force and held that a special investigator's display of a firearm did not give rise to an excessive force claim.

Analysis

The alleged crime for which Hall was arrested is a minor misdemeanor and thus presumably not severe. Further, while there is evidence that Hall may have posed an immediate threat to the safety of Jodie Zimmerman, the victim of his alleged crime, there is no evidence that Hall posed an immediate threat to the safety of Officer Jacobs. However, there is evidence that

Hall attempted to avoid arrest because he attempted to leave the scene of the investigation although he did stop after several warnings.

Hall's Complaint does not specifically identify which conduct by Officer Jacobs allegedly constituted the use of excessive force. In his Memorandum In Opposition, Hall argues that the "wielding" of his ASP by Officer Jacobs and threatening to break Hall's vehicle window was a display of excessive force. However, Officer Jacobs threat to break Hall's vehicle window was reasonable to prevent Hall, who was a criminal suspect at the time, from leaving the scene of an investigation. Further, instead of using force, Officer Jacobs merely threatened to use force and Hall reports no injuries as a result thereof. The totality of the circumstances justified the display of his ASP by Officer Jacobs and the threat to break Hall's vehicle window if he did not exit.     In his Memorandum In Opposition, Hall also argues that Officer Jacobs used excessive force when he "used a great deal of force by having him [Hall] handcuffed, detained for nearly an hour in the back of his cruiser[3], and arrested." Again, the handcuffing and detention of Hall was reasonable because Hall had been placed under arrest, an arrest that, as determined above, passes constitutional muster. Further, Hall made no complaints in regard to the manner in which he was handcuffed. Finally, although the "one hour" that Hall was held in Duane Jacobs' police cruiser is Hall's estimate, one hour is not unreasonable given that Hall's vehicle was searched and law enforcement officers from at least three different jurisdictions were present attempting to investigate and sort out at least two possible charges, one made by Hall and one allegedly caused by Hall.

In his Memorandum In Opposition, Hall makes much of observing Officer Jacobs

---

[3]The record indicates that Hall was detained in the back of Duane Jacobs' cruiser.

'beating the ASP angrily on the ground in a wild rage." Yet, Hall testified that he did not think this was a threat to him. Further, there is no evidence indicating that Officer Jacobs was in a "wild rage." In fact, Deputy Moore testified that Officer Jacobs extended his ASP in a proper manner and then closed the ASP on the ground in a normal fashion.

Conclusion

A reasonable finder of fact could come to but one conclusion: the totality of the circumstances justified the handcuffing, arrest and detention of Hall in the cruiser. There are no genuine issues of material fact and Officer Jacobs is entitled to judgment as a matter of law.

**Third Cause of Action: Ratification of Unlawful Arrest and Continued Unlawful Detention**

In his Third Cause of Action, Hall alleges that Duane Jacobs ratified Officer Jacobs' unlawful seizure, arrest and detention and that Duane Jacobs unlawfully detained Hall after arriving on the scene. The Defendants respond that Hall has no evidence to support his claims against Duane Jacobs.

In his Memorandum In Opposition, Hall identifies two actions by Duane Jacobs that allegedly violated Hall's constitutional rights. First, Hall alleges that his constitutional rights were violated when Duane Jacobs ratified the actions of Officer Jacobs. Second, Hall alleges that his constitutional rights were violated when Duane Jacobs "added trumped up felony offenses, unsupported by any facts, in the incident report."

Hall's Third Cause of Action against Duane Jacobs fails because it was Officer Jacobs and not Duane Jacobs that seized, arrested and detained Hall, and Hall has not identified law finding that the ratification of an alleged unlawful seizure, arrest and detention is a violation of constitutional rights. Hall's Third Cause of Action against Duane Jacobs also fails because the

alleged "trumped up" charges were never brought. Duane Jacobs merely submitted possible

charges of kidnaping, abduction and menacing by stalking against Hall to the prosecutor's office

in a "Suspect Supplement." These charges were submitted to the prosecutor's office for

consideration. Apparently the prosecutor's office determined that these charges should not be

brought.

Hall's claim that Duane Jacobs ratified Officer Jacobs' decisions is not actionable.

Further, a reasonable finder of fact could come to but one conclusion: Duane Jacobs did not

detain Hall. There are no genuine issues of material fact and Duane Jacobs is entitled to

judgment as a matter of law on Hall's Third Cause of Action for ratification of Unlawful Arrest

and Continued Unlawful Detention.

### First, Second and Third Causes of Action: Substantive Due Process

In his Complaint, Hall alleges violations of Fourteenth Amendment rights without

alleging which, if any, specific facts support those Fourteenth Amendment violations. (Compl.

¶¶ 30, 36, 42.) The Defendants then argue that they did not violate Hall's substantive due process

rights under the Fourteenth Amendment and Hall responds that they did when they unlawfully

seized, detained, arrested and searched him.

Alleged unlawful searches, seizures, and arrests are to be analyzed under Fourth

Amendment jurisprudence. *See Garner*, 471 U.S. 1. This has been accomplished above and need

not be further considered. Even though not specifically supported in Hall's Complaint, if

substantive due process allegations were to be considered based upon the Motion for Summary

Judgment and Memorandum In Opposition thereto, they would be without merit.

Legal Provisions

The Due Process Clause of the Fourteenth Amendment provides that, "[n]o State shall…
deprive any person of life, liberty or property, without due process of law." *Culberson v. Doan*,
125 F. Supp.2d 252, 266 (S.D. Ohio 2000)(citing *DeShaney v. Winnebago County Department of
Social Services*, 489 U.S. 189, 195-97 (1989)). There are two categories of due process claims,
procedural due process claims and substantive due process claims. *Braley v. City of Pontiac*, 906
F.2d 220, 224 (6th Cir. 1990). Substantive due process claims are further subdivided into two
kinds: (1) deprivation of a particular constitutional guarantee and (2) actions that government
officials may not take no matter what procedural protections accompany them. *Id.* at 224. The
latter is alternatively known as actions that "shock the conscience." *Id.*(citing *Wilson v. Beebe*,
770 F.2d 578, 585-86 (6th Cir. 1985)).

"Most cases involving police conduct that shocks the conscience have involved
allegations of excessive force or physical brutality." *Id.* at 226. However, the Supreme Court has
rejected the "shock the conscience" test in cases of excessive force by police officers. *Id.*(citing
*Graham v. Connor*, 490 U.S. 386 (1989)). Excessive force allegations are analyzed under Fourth
Amendment jurisprudence. *Id.*

Analysis

In this case, Hall's excessive force claim is analyzed above. What remains then is to
determine if any of the actions taken by Officer Jason Jacobs or by Duane Jacobs, other than
those actions analyzed under the Fourth Amendment standards, "shock the conscience."

The Supreme Court has said that actions that shock the conscience are actions that
"offend those canons of decency and fairness which express the notions of justice of English-

speaking peoples even toward those charged with the most heinous offenses."[4] *Rocin v. California*, 342 U.S. 165, (1952)(quoting *Malinski v. New York*, 324 U.S. 401, 416-18 (1945)). Further, courts may decide that certain behavior does not shock the conscience as a matter of law. *Braley*, 906 F.2d at 227.

In his Memorandum In Opposition, Hall argues that the conduct of the officers during his seizure, search and arrest shocks the conscience. Hall argues that there was no need for a show of force because he was not threatening harm to anyone. He also argues that the force used by Officer Jacobs was not to restore discipline but for the purpose of retaliating against Hall because Hall had reported Officer Jacobs for transporting a small child in his police cruiser.

However, Officer Jacobs had probable cause to arrest Hall as set forth above keeping in mind that any subjective reasons that Officer Jacobs may have had are irrelevant. Further, because Hall attempted to leave the scene of the investigation, Officer Jacobs had reason to make a show of force. Further, the submission of possible charges of kidnaping, abduction and menacing by stalking against Hall to the prosecutor's office does not shock the conscience. These charges were merely submitted for consideration by a prosecutor.

Conclusion

---

[4]Hall has identified four factors that he argues are to be used to determine whether an action shocks the conscience. However, those four factors relate to the use of force and the Supreme Court has determined that excessive force claims, including those identified as substantive due process claims, are to be analyzed under the Fourth Amendment. Therefore, the Fourth Amendment and not the substantive due process factors identified by Hall is used to analyze Hall's excessive force claims. Also of note is that the Supreme Court decision regarding analyzing excessive force claims under the Fourth Amendment (*Graham v. Connor*) was entered after the district court decision (*Zumbroegel v. City of Dearborn Heights*) from which Hall obtained the factors.

In sum, Hall has not identified any actions associated with his seizure, search and arrest or with the submission of charges of kidnaping, abduction and menacing by stalking to the prosecutor's office that offend those canons of decency and fairness which express the notions of justice of English-speaking peoples, including this Court. Hall makes no specific substantive due process violations in his Complaint. Further, there are no genuine issues of material fact and Officer Jacobs and Duane Jacobs are entitled to judgment as a mater of law on the substantive due process violations set forth by Hall in his Memorandum In Opposition.

## Qualified Immunity

Officer Jacobs and Duane Jacobs argue that they are entitled to qualified immunity from the allegations made by Hall against them. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). However, if no constitutional right is violated, there is no need for a qualified immunity analysis. *Id.* at 201.

In this case, there are no remaining allegations of constitutional violations against Officer Jacobs or Duane Jacobs. Therefore, a qualified immunity analysis is not necessary.

### Fourth Cause of Action: Policy, Practices and Customs and Failure To Train

Hall's Fourth Cause of Action is against Gratis for the unlawful conduct of its agents, servants, or employees; its policy, practices and customs; and its deliberate indifference towards Hall's constitutional rights. Hall specifically alleges that Gratis failed to adequately investigate the work history of individuals prior to hiring them as police officers; that Gratis hired police officers with knowledge of their inadequate training and experience; that Gratis failed to properly train and educate its police officers; that Gratis failed to oversee and supervise Officer

Jacobs and Duane Jacobs; and that Gratis failed to properly discipline its police officers. (Compl. ¶ 48.) The Defendants respond that Hall cannot prove his federal claims against Gratis.

A municipality may not be held liable under § 1983 solely because it employs a tortfeasor. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). However, a plaintiff may assert a § 1983 claim on the basis of municipal custom or policy, but the plaintiff must identify the policy or custom, connect the policy or custom to the municipality itself and show that the particular injury was incurred because of the execution of that policy or custom. *Sigley*, 437 F.3d at 538. There must be a direct causal link between a municipal policy or custom and the alleged constitutional violation such that the municipality's deliberate conduct can be deemed the moving force behind the constitutional violation. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 693 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 386 (1989).

In this case, Hall has not identified any constitutional violations. Therefore, he cannot show that any Gratis policy or custom constitutionally injured him. There are no genuine issues of material fact and Gratis is entitled to judgment as a matter of law on Hall's Fourth Cause of Action against Gratis for violation of § 1983.

## SUMMARY

Hall has not presented evidence from which a reasonable finder of fact could conclude that his arrest and detention by Officer Jacobs was unreasonable and without probable cause. Therefore, Hall's First Cause of Action is DISMISSED.

Hall has also not presented evidence from which a reasonable finder of fact could conclude that Officer Jacobs used excessive force when he seized, arrested and detained Hall.

Therefore, Hall's Second Cause of Action is DISMISSED.

Hall has also not presented evidence from which a reasonable finder of fact could conclude that Duane Jacobs illegally ratified Hall's arrest or otherwise continued to unlawfully detain Hall. Therefore, Hall's Third Cause of Action is DISMISSED.

Hall has not presented evidence supporting a separate due process claim. However, if Hall's factual allegations were to be considered from a substantive due process perspective, he has not presented evidence from which a reasonable finder of fact could conclude that either Officer Jacobs or Duane Jacobs violated his substantive due process rights.

Because Hall has not shown any constitutional violations, qualified immunity for Officer Jacobs and Duane Jacobs need not be considered. Hall's Fourth Cause of Action against Gratis must also be DISMISSED because Hall has not shown any Constitutional violations.

There are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law on all of Hall's causes of action. The Defendants' Motion for Summary Judgment (doc. #25) is, therefore, GRANTED. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this 27th day of October, 2008.

**\*S/THOMAS M. ROSE**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE